UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | No. 6:11-CR-11-GFVT-REW |
| | ) | No. 6:16-CV-167-GFVT-REW |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| JAMES EDWARD ROSE, | ) | |
| | ) | |
| Defendant/Movant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On February 21, 2016,[1] James Rose wrote a letter to the Court. On August 9, 2016, the District Judge construed this letter as a *pro se*[2] Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. DE ##43 (Order); 44 (Motion).[3] On August 31, 2016,[4] and in partial compliance with DE #46 (Order), Rose filed (among other things) a corrected § 2255 motion. *See* DE #51. The Court granted him an extension of time to file a supporting memorandum. DE #53 (Order). Rose soon filed the memorandum. DE #54. A few weeks later, he filed a nearly identical document in support. DE #55.

---

[1] Rose did not affirm the date on which he placed the letter in the prison mailing system. He dated the letter February 21, 2016, but the postmark is from February 24, 2016. *Compare* DE #41, *with* DE #41-1.

[2] *Pro se* petitions receive a comparatively lenient construction by the Court. *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (noting that "allegations of a *pro se* habeas petition, 'though vague and conclusory, are entitled to a liberal construction'" including "active interpretation" toward encompassing an allegation stating "federal relief").

[3] Judge Van Tatenhove construed solely Rose's reference to *Johnson* and *Taylor* as § 2255 material, *see* DE #43, although the letter also contained suggestions regarding filing a notice of appeal. *See also* DE #42 (7/1/16 Letter from Rose). The Court, endeavoring to permit the *pro se* Movant to fully set out his grounds for relief, has evaluated all the *Johnson* and non-*Johnson* claims.

[4] This date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002) (*per curiam*). Rose affirmed under penalty of perjury that he placed the corrected § 2255 motion in the prison mailing system on August 31, 2016. DE #51, at 12.

The Court bifurcated, per a specific analysis, Rose's *Johnson*[5] and non-*Johnson* claims. *See* DE ##56, 57 (Orders). The Court then completed an initial review of the non-*Johnson* claims and perceived them to be untimely. DE #56. However, in order to give Rose a fair opportunity to respond, the Court ordered briefing on the issue of timeliness / equitable tolling. *Id.* After an extension of time, DE #61, Rose responded, DE #62. The United States also responded, seeking dismissal. DE #67, at 1-3.

On the *Johnson* claim, the Court denied, again per a specific evaluation, Rose's embedded stay request and ordered briefing. DE #59 (Order). The United States responded in opposition on the *Johnson*-related merits. DE #63 (Response). Rose had the opportunity to reply, DE #59, but did not.

Having reviewed all the filings under the applicable standards, the Court **RECOMMENDS** that the District Court **DISMISS** the time-barred non-*Johnson* claims (contained or expressed in DE ##55, 54, 51, 44, and 42) **WITH PREJUDICE**, **DISMISS** Rose's *Johnson* claim (contained or expressed in DE ##55, 54, 51, and 44) **WITH PREJUDICE**, and wholly **DENY** a Certificate of Appealability.

## I.    NON-*JOHNSON* CLAIMS

### A.    *Statute of Limitations*

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Section 2255 provides in relevant part:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
>
> > (1) the date on which the judgment becomes final;
> >
> > (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United

---

[5] *Johnson v. United States*, 135 S. Ct. 2551 (2015).

States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Judge Van Tatenhove entered judgment[6] on October 11, 2011. DE #39 (Judgment). Rose did not appeal. In 2011, an unappealed judgment became final 14 days after entry. Fed. R. App. P. 4(b)(1)(A); *Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004) (stating 10 days under the pre-2009 amended Rule). Accordingly, Rose had 14 days from October 11, 2011, or until October 25, 2011, to appeal. He then had one year from October 25, 2011, to file a § 2255 motion. Rose did not file his motion until (at the earliest) February 21, 2016, thereby missing the filing deadline by **over 3 years**.

Rose makes no credible attempt to avoid § 2255(f). Rose did not endeavor to justify timeliness earlier in the proceedings; he left blank the § 2255 form's timeliness explanation section. *See* DE #51, at 10-11. Rose's show cause response does not address § 2255(f) timeliness whatsoever, instead arguing the merits of the substantive claim. *See* DE #62. Even after passage of the appeal window, Rose did not promptly act to protect his rights, instead waiting **over 4 years** to file a § 2255 motion. Further, the case docket reflects no activity between October 2011 (Judgment entry) and February 2016, save for an administrative exhibit return receipt in 2012.

---

[6] The case involved a violent assault by Rose against federal correctional officers. Rose went to trial, and a jury found Rose guilty of all Counts of the Indictment. *See* DE ##1 (Indictment); 25 (Verdict). Judge Van Tatenhove sentenced Rose to a total prison term of 1,260 months, consecutive to any other federal or state sentence, followed by a total 3-year term of supervised release. DE #39 (Judgment).

Simply put, Rose filed more than one year after the judgment became final. The non-*Johnson* claims are conclusively time-barred under § 2255(f).

### B.    Equitable Tolling

Further, equitable tolling does not spare Rose's non-*Johnson* claims.[7] The AEDPA statute of limitations is not jurisdictional; therefore, equitable tolling may apply in some circumstances. *Holland*, 130 S. Ct. at 2560 (citing *Day v. McDonough*, 126 S. Ct. 1675, 1681 (2006)); *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). However, the doctrine applies "sparingly," and the burden is on the defendant to prove its applicability. *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010). When requesting equitable tolling of the AEDPA limitation period, a petitioner bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Holland*, 130 S. Ct. at 2562 (quoting *Pace*, 125 S. Ct. at 1814). The Sixth Circuit accordingly evaluates requests for equitable tolling under this two-part test. *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749-50 (6th Cir. 2011) (no longer following the prior five-factor test). The proper inquiry is case-by-case and fact-based. *See Holland*, 130 S. Ct. at 2562-63. The doctrine "allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Plummer v. Warren*, 463 F. App'x 501, 504 (6th Cir. 2012) (citation and internal quotation marks omitted).

---

[7] Equitable tolling applies to § 2255 motions. *Dunlap v. United States*, 250 F.3d 1001, 1004 (6th Cir. 2001), *abrogated on other grounds by Hall v. Warden*, 662 F.3d 745 (6th Cir. 2011) ("Because there is a rebuttable presumption that equitable tolling applies to statutes of limitations and there is no indication that Congress did not intend for equitable tolling to apply to the limitation period in habeas cases, the one-year statute of limitations in § 2255 is subject to equitable tolling."); *Jones v. United States*, 689 F.3d 621, 626-27 (6th Cir. 2012) (applying equitable tolling to a § 2255 motion); *Solomon v. United States*, 467 F.3d 928, 933-35 (6th Cir. 2006) ("[T]his is an appropriate case to equitably toll the AEDPA's statute of limitations. Petitioner's § 2255 motion therefore is not time-barred[.]"); *see also Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) ("§ 2244(d) is subject to equitable tolling."). The Government does not contest its conceptual applicability. DE #67, at 3.

Rose's theory, charitably construed, seems to be one of attorney non-communication. "Attorney neglect . . . does not generally give rise to equitable tolling. However, the Supreme Court has held that a serious instance of attorney misconduct may rise to the level of an extraordinary circumstance necessary to justify equitable tolling." *Patterson v. Lafler*, 455 F. App'x 606, 609-10 (6th Cir. 2012) (internal citation, quotation marks, and alteration removed). Similarly, "equitable tolling may be appropriate where a plaintiff 'was abandoned by his attorney.'" *Gordon v. England*, 354 F. App'x 975, 980 (6th Cir. 2009) (quoting *Cantrell v. Knoxville Cmty. Dev. Corp.*, 60 F.3d 1177, 1180 (6th Cir. 1995)).

Here, there is utterly no basis to warrant application of the doctrine of equitable tolling. Again, needless to say, the delay of **over 4 years** between conviction finality and Rose's § 2255 filing clearly undercuts the diligence of his rights pursuit. Rose would have known (or at least, strongly suspected) in October 2011 that his attorney did not file a notice of appeal, but he took no steps for over 4 years to raise the issue with the Court or assert his rights. Indeed, Rose's own series of correspondence to counsel indicates escalating concern over an appeal (or the lack thereof) and knowledge of the relevant issues. *See* DE #62-1 (Letters from 2012, 2013, and 2014). Thus, even after writing Stephens in July 2012 (within the § 2255 filing window), *see* DE #62-1, at 1, and apparently receiving no response, Rose declined to raise any matters with the Court. Instead, he wrote Stephens again on October 20, 2012 (still within the § 2255 filing window), noting mounting concern over an appeal and Stephen's lack of communication. *Id.* at 2. Still, Rose uttered not a peep of protest with the Court until February 20*16*. Nothing in the record suggests Rose lacked actual or constructive notice of the filing requirements of § 2255, and the Court finds no evidence of reasonable ignorance of the legal requirement to file the claim. In fact, in July 2012, Rose specifically included contemplation of a § 2255 motion in his

letter to Stephens, *see* DE #62-1, at 1, but did not file one.[8] In September 2013, Rose perceived his lawyer was "up to no good," and he directly doubted any appeal was pending. *Id.* at 4. He waited 2.5 years from that point to involve the Court.

Further, the record reflects no extraordinary circumstance sufficient to warrant equitable tolling. Rose does not attempt to establish any extraordinary circumstance, and the Court perceives none. Rose was fully aware of his rights and showed, via the letters to counsel, that he had the ability to make case-related inquiries and allegations. He failed to timely file, but that neglectfulness was not due to any extraordinary circumstance beyond his control. To the extent he seeks to blame Stephens's general unresponsiveness, the theory is unavailing; Rose knew, as his letters show, of potential issues with Stephens's representation within the § 2255 filing window but failed to timely raise the matters with the Court. That chosen course of conduct was entirely Rose's. "Attorney neglect . . . does not generally give rise to equitable tolling," *Patterson*, 455 F. App'x at 609, and that is the case here. This record—considering Rose's own course of conduct—does not suggest any "serious instance of attorney misconduct" vis-à-vis § 2255 motion timeliness. Mr. Stephens did not, for example, "fail[] to file [a] petition on time, even though [Rose] repeatedly warned him of the statute of limitations," *id.* at 610 (using the *Holland* factual example), or "beg[i]n using cocaine" during case pendency, *id.* (using an example from a prior Sixth Circuit case). Stephens's apparent non-communication here was no extraordinary circumstance blocking Rose from filing *his own* § 2255 motion. On this record, under the prevailing standards, the doctrine of equitable tolling does not apply to save Rose's

---

[8] The letter states that a court had "order[ed] the prosecution to respond to my 2255 for further judicial inquiry." DE #62-1, at 1. The record reflects no such activity from 2012. Perhaps Rose was referencing his Eastern District of Virginia case, which he mentions at DE #51, at 10. That case did involve a § 2255 motion, *see* DE #102, case no. 1:07-cr-503-LO (E.D. Va.), and now involves a second § 2255 motion raising *Johnson* issues, authorized by the Fourth Circuit. As relevant here, the point is that Rose was well aware of § 2255 but still failed to timely file a § 2255 motion in this case.

untimely non-*Johnson* claims.[9] Rose did not file timely § 2255 non-*Johnson* claims, and nothing but his own chosen course of conduct caused that result. He does not establish any extraordinary obstacle to timely filing. The tolling burden is Movant's, and he wholly fails to carry it.

  C.  *Conclusion*

  Because Rose's non-*Johnson* claims are time-barred, the Court **RECOMMENDS** that the District Court **DISMISS** the non-*Johnson* claims (contained or expressed in DE ##55, 54, 51, 44, and 42) **WITH PREJUDICE** and **DENY** a Certificate of Appealability.[10]

**II.**  ***JOHNSON* CLAIM**

  A.  *Standard of Review*

  Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). A defendant alleging a constitutional basis must establish "an error of constitutional magnitude" and show that the error had a "substantial and injurious effect or influence on the proceedings" in order to obtain § 2255 relief. *Watson v.*

---

[9] Rose does not argue for equitable tolling on the ground that he is actually innocent, and he has not presented or even pursued a "credible" claim of actual innocence. *See Cleveland v. Bradshaw*, 693 F.3d 626, 632-33 (6th Cir. 2012).

[10] No Certificate of Appealability should issue as to these claims because the timeliness result is not on this record fairly debatable. *See Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000) (requiring a petitioner to demonstrate, when a court dismisses on procedural grounds, that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling").

*United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1721-22 (1993)). When alleging a non-constitutional error, a defendant must prove that the error constituted a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 82 S. Ct. 468, 471 (1968)); *see also Watson*, 165 F.3d at 488. In making a § 2255 motion, a movant generally bears the burden of proving factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (*per curiam*) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

   *B.   Analysis*

   Throughout the papers, Rose phrases the *Johnson* claim in a variety of ways; each is cursory and factless. In the originating motion, Rose simply says: "The decision in U.S. v. Johnson, 192 L.ed.2d 569 (2015), and Taylor v. U.S., 495 U.S. 575 effects my case." DE #44, at 1 (all as in original). In the subsequently submitted § 2255 form motion, Rose fares little better. He writes (in a fragment): "In light of Johnson v. United States, 135 S. Ct. 2551 (2015, and Taylor v. United States, 495 U.S. 575, 600, 110 S. Ct. 214 ACCA 4B1.1." DE #51, at 6 (all as in original). Rose gives the claim another shot in the supporting memorandum—he includes a heading "UNDER THE JOHNSON DECISION," followed by three paragraphs of text. DE #54, at 15-16. The first paragraph summarizes *Johnson*'s holding. *Id.* at 15. In the second paragraph, Rose notes that some defendants are challenging "one or more Sentencing Guideline enhancements," including the career offender enhancement, post-*Johnson*. *Id.* at 16.[11] Rose then

---

[11] Rose includes a reference to U.S.S.G. § 2K2.1. DE #54, at 16. The Court sees no mention of that Guideline provision in Rose's PIR.

spends 1.5 paragraphs requesting a stay pending *Beckles*,[12] which the Court has denied. *See* DE #59. The *Johnson*-related section in DE #55 is identical to that in DE #54. *See* DE #55, at 15-17.

As is clear, despite Rose's numerous opportunities to present a case-specific *Johnson* claim, he has not done so. Apart from the efforts discussed, Rose also had the opportunity to reply to the Government's specific *Johnson*-related arguments, *see* DE #59, but he did not. Rose provides no tailored explanation or elaboration, with factually relevant analysis or reasoning, for the *Johnson* claim. For the following reasons, the claim is wholly without merit.

*Johnson* held unconstitutional the residual clause of the Armed Career Criminal Act (ACCA) (18 U.S.C. § 924(e)(1) and its definitions). 135 S. Ct. at 2563.[13] Here, the Court did not sentence Rose under the ACCA, which applies only to § 922(g) violators. Instead, Rose, in his prison assault, violated 18 U.S.C. §§ 113(a)(1), 111(a)(1) and (b), 113(a)(3), and 1791(a)(2). *See* DE #39 (Judgment).

However, the Court did indeed classify Rose as a career offender under the United States Sentencing Guidelines, and "*Johnson*'s rationale applies with equal force to the Guidelines' residual clause." *United States v. Pawlak*, 822 F.3d 902, 907 (6th Cir. 2016). The Court sentenced Rose as a career offender under U.S.S.G. § 4B1.1. *See* DE #48 (PIR), at 8 ("[T]he defendant is a career offender[.]"); DE #38 (Sentencing Minutes adopting PIR and noting no objections). The definitions associated with the career-offender enhancement are at U.S.S.G. § 4B1.2. *Johnson*, which invalidated only the ACCA residual clause (and, by logical extension, only § 4B1.2(a)(2)'s residual clause), clearly did not address or impact the "crime of violence" elements or enumerated offenses clauses, nor did it impact the definition of a controlled

---

[12] *Beckles v. United States*, 136 S. Ct. 2510 (2016) (granting *certiorari* to address *Johnson*'s retroactive application to career-offender cases).

[13] "*Johnson* is retroactive in cases on collateral review[.]" *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016).

substance offense. *See, e.g.*, *Johnson*, 135 S. Ct. at 2563; *United States v. Thompson*, 619 F. App'x 514, 515 (6th Cir. 2015); *Trice v. United States*, No. 3:13-CR-96-CRS, 2016 WL 867545, at *7 (W.D. Ky. Jan. 7, 2016); *United States v. Smith*, Nos. 10-CR-20058, 12-CV-11913, 2015 WL 5729114, at *13 (E.D. Mich. Sept. 30, 2015).[14]

Rose does not show, under the § 2255 standard, that he is entitled to habeas relief. Again, the *entirety* of Rose's claim is a series of cursory and factless invocations of the *Johnson* case name. Rose, despite *numerous* opportunities, provides or cites to no evidence or information to support any *Johnson* claim. He cites no law or authority establishing that any unspecified offense in his record no longer counts toward the career-offender total after *Johnson* or that *Johnson* otherwise affects his conviction or sentence. The claim thus independently fails based on Rose's complete dereliction in providing any specific detail to his assertions. *See, e.g.*, *Bundy v. United States*, 178 F.3d 1293, 1999 WL 115482, at *2 (6th Cir. Feb. 10, 1999) (table); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) ("When a motion is made to vacate or set aside a judgment under Section 2255, the movant must set forth facts which entitle him to relief. Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to [even] warrant a hearing."); *Ryals v. United States*, Nos. 1:05-CV-238, 1:03-CR-176, 2009 WL 595984, at *5 (E.D. Tenn. Mar. 6, 2009) ("The burden is on Ryals to articulate and plead sufficient facts to state a claim under § 2255. . . . Because Ryals' § 2255 motion merely asserts a vague, general conclusion without sufficient substantiating allegations of fact, the motion fails to state a viable claim and is without merit."); *United States v. Gallion*, Nos. 2:07-39-DCR-01, 2:13-7325-DCR-JGW, 2014 WL 2218361, at *14 (E.D. Ky. May 27, 2014) ("Defendant bears the burden to articulate sufficient facts to state a viable claim for relief under

---

[14] The general question of *Johnson*'s retroactive application to career-offender cases remains open. *See Beckles*, 136 S. Ct. 2510 (granting *certiorari* to address this issue). Rose's motion fails, even assuming *Johnson* properly applies to modify § 4B1.1.

28 U.S.C. § 2255. Because defendant has made only vague conclusory statements without substantiating allegations of specific facts, he has not met that burden and, consequently, he is not entitled to § 2255 relief." (internal quotation marks and alteration removed)).

As an alternative basis for dismissal, the Court has independently reviewed Defendant's PIR and the entire case record to probe career-offender qualification. Rose previously agreed he qualified by not objecting to the PIR. *See* DE ##38; 48, at 27. To properly qualify as a career offender, Rose must satisfy three criteria. First, he must have been at least 18 years old at the time of offense commission; Rose was.

Second, the offense of conviction must have been (as relevant here) a felony crime of violence. The parties do not address this matter whatsoever. The Court perceives, especially in light of Rose's lack of contestation, that, at the very least, one of Rose's case convictions was a felony crime of violence. *See United States v. Veach*, 455 F.3d 628, 635 (6th Cir. 2006) ("Veach does not dispute . . . that one of the instant offenses of conviction (threatening to murder a federal law enforcement officer with intent to impede the performance of official duties) can be classified as a 'crime of violence[.]'"); *United States v. Hernandez-Hernandez*, 817 F.3d 207, 210 (5th Cir. 2016) ("[f]inding that Hernandez's conviction under § 111(a)(1) and (b) necessarily required proof that he used, attempted to use, or threatened to use physical force against the person of another");[15] *Owens v. United States*, No. 2:16CV463, 2016 WL 4582054, at *2-*4

---

[15] The Court likely would not alone find that Rose's § 111(a)(1) convictions qualify, but is seriously hamstrung by the parties' failure to brief the topic. *Hernandez-Hernandez* itself indicated that § 111(a) alone would be insufficient. 817 F.3d at 216 ("The bodily injury requirement in (b) further indicates that minimally forceful, albeit repugnant, conduct such as spitting or the projecting of bodily fluids—that Hernandez argues can underlie a § 111(b) violation—is instead covered by subpart (a). [*United States v. Ramirez*, 233 F.3d 318 (5th Cir. 2000)] involved just such a scenario where an inmate who flung a urine-feces mixture at a corrections officer was convicted under the felony provision of § 111(a). *Ramirez*, 233 F.3d at 322 (citing a collection of cases involving conduct such as 'bumping an Assistant United States Attorney,' 'spitting in the face of a mail carrier,' 'grabbing a federal wildlife agent's jacket,' and

(E.D. Va. Sept. 1, 2016) (extensively analyzing 18 U.S.C. § 113(a)(1) and holding: "Assault with Intent to Commit Murder, in violation of 18 U.S.C. § 113(a)(1), is categorically a crime of violence[.]"); *United States v. Sutton*, No. 2:11-CR-151-WFN-1, 2016 WL 7042952, at *3 (E.D. Wash. Apr. 26, 2016) (extensively analyzing 18 U.S.C. § 113(a)(3) and holding: "The Court concludes that § 113(a)(3) qualifies as a crime of violence[.]"); *cf. United States v. Cross*, 931 F.2d 55, No. 90-5829, 1991 WL 59718, at *1 (4th Cir. Apr. 22, 1991) (table) (stating that § 113(c) was a crime of violence); U.S.S.G. § 4B1.2(a), application note 1 (listing murder and aggravated assault, including attempt of either).

Third, Rose must have had "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). The Court perceives the last criterion to be the one theoretically at issue here.

Before proceeding to evaluation of the possible predicates, the Court makes a general comment on the briefing. On both sides (as already suggested above), the briefing in this matter is poor. The Court perhaps expects and must endure substandard briefing from a *pro se* litigant, but the Court expects much more from the United States Attorney's Office. The United States did not, *in any way*, address the foundational career offender prong 2 qualification, and the Government ignores *numerous* issues of significant weight and evaluative need throughout the requisite predicate-qualification analysis. Additionally, as the Court explains, a cursory Westlaw search quickly reveals published Circuit precedent holding the opposite of the Government's positions here on many topics—germane legal context to which the United States does not alert the Court. The United States does not cite these cases—indeed, *any* case or authority—holding

---

'poking [an] IRS agent in the chest,' all of which were prosecuted under § 111(a))."); *see also, e.g.*, *United States v. Dominguez-Maroyoqui*, 748 F.3d 918, 921 (9th Cir. 2014) ("The § 111(a) felony does not require proof, as a necessary element, that the defendant used, attempted to use, or threatened to use physical force as defined in *Johnson*.").

or suggesting qualification of the predicates it identifies. All of this is despite the Court's prior explicitly stated expectation (preemptively attempting to ward off this precise problem) that the Government provide "targeted analysis under the applicable case law regarding each of Rose's potential predicate offenses." DE #59, at 2. The Court considered simply sending the parties back to the drawing board on the *Johnson* analysis, but ultimately, as this Recommendation indicates, elected against it.

Per the subsequent analysis, the Court concludes that Rose had (and has) the requisite qualifying predicates without resorting to the Guidelines' § 4B1.2(a)(2) residual clause. *See* DE #48 (PIR), at ¶ 48. The United States asserts, while providing **no** relevant offense documentation or specific analysis, that three general categories of Rose's prior convictions qualify as career offender predicates here. The Court quickly dispatches the first two.

*First*—the United States identifies Rose's District of Columbia robbery[16] conviction as a properly qualifying career offender predicate. *See* DE ##48, at ¶ 45; 63, at 7. However, in the Eastern District of Virginia, in light of *Johnson*, the Government conceded that a "conviction for D.C. Robbery[] does not satisfy the ACCA definition of 'violent felony.'"[17] *Crutchfield v. United States*, Nos. 1:08CR56, 1:16CV656, 2016 WL 4467902, at *3 (E.D. Va. Aug. 22, 2016). Indeed, as forecast above, published Circuit precedent holds that D.C. robbery is not properly a

---

[16] "Whoever by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, shall take from the person or immediate actual possession of another anything of value, is guilty of robbery, and any person convicted thereof shall suffer imprisonment for not less than 2 years nor more than 15 years." D.C. Code § 22-2801. This provision has existed unchanged, save for the last sentence (not included in the excerpt above), since 1967. *See* § 22-2801 legislative history; *see also In re Sealed Case*, 548 F.3d 1085, 1089 (D.C. Cir. 2008) (quoting the same language from the version of the statute in effect in 1987). Per the cited cases, it does appear that the crime was renumbered from § 22-2901 to § 22-2801 at some point. Rose committed the crime in 1991.

[17] "Whether a conviction is a violent felony under the ACCA is analyzed in the same way as whether a conviction is a crime of violence under the United States Sentencing Guidelines[.]" *United States v. McMurray*, 653 F.3d 367, 371 n.1 (6th Cir. 2011).

crime of violence. *United States v. Mobley*, 40 F.3d 688, 694-95 (4th Cir. 1994) ("The 'force' the D.C. statute requires, however, as the district court also noted, is merely the '*de minimis* force directed at the stolen *property* rather than force directed at the *person* of the victim' necessary to remove the property from its place. Thus, the statute does not fall within subpart (i) because it does not have as an element 'the use, attempted use, or threatened use of physical force against the person of another.'" (citation removed)); *United States v. Mathis*, 963 F.2d 399, 409 (D.C. Cir. 1992) (holding that a "stealthy seizure" in the D.C. robbery statute is not a violent felony); *In re Sealed Case*, 548 F.3d at 1089 (same). The Court does not count D.C. robbery as a career offender qualifier.

*Second*—the Government identifies Rose's Virginia assault and battery convictions as properly qualifying career offender predicates. DE ##48, at ¶¶ 46-47; 63, at 7. Assault and battery are curious offenses (or, under some formulations, a single curious offense) under Virginia law:

> In Virginia, statutory assault and battery offenses, including those under VA CODE ANN. § 18.2-57.2, incorporate the common law crime of 'assault and battery' without statutory modification or restriction. *Clark v. Commonwealth,* 279 Va. 636, 691 S.E. 2d 786, 789 (2010) (explaining that 'because the elements of assault are not statutorily defined, this Court must apply the common law definition'); *Montague v. Commonwealth,* 278 Va. 532, 684 S.E.2d 583, 588 (2009) (affirming conviction under VA CODE ANN. § 18.2-57 and noting that '[a]ssault and battery are common law crimes'). It is clear from longstanding Virginia jurisprudence that battery may be accomplished with the slightest touch and no physical injury is required. In 1867 Virginia's highest court explained that
>
> > [a]n assault is any attempt or offer with force or violence to do a corporeal hurt to another, whether from malice or wantonness, as by striking at him in a threatening or insulting manner, or with such other circumstances as denote at the time an intention, coupled with a present ability, of actual violence against his person, as by pointing a weapon at him when he is within reach of it. When the injury is actually inflicted it amounts to a battery, which includes an assault, and this, *however small it may be, as by*

> *spitting in a man's face, or in any way touching him in anger,* without lawful provocation.

> *Hardy v. Commonwealth,* 58 Va. 592, 17 Gratt. 592 at *6 (1867) (emphasis added). 'A battery is the unlawful touching of the person of another by the aggressor himself, or by some substance set in motion by him' and '[t]he law cannot draw the line between different degrees of force, and therefore totally prohibits the first and lowest stage of it.' *Lynch v. Commonwealth,* 131 Va. 762, 109 S.E. 427, 428 (1921) (citation omitted) (emphasis added). 'The law is so jealous of the sanctity of the person that the slightest touching of another, or of his clothes, or cane, or anything else attached to his person, if done in a rude, insolent, or angry manner, constitutes a battery for which the law affords redress.' *Crosswhite v. Barnes,* 139 Va. 471, 124 S.E. 242, 244 (1924); *see also Jones v. Commonwealth,* 184 Va. 679, 36 S.E.2d 571, 572 (1946) ('Battery is the actual infliction of corporal hurt on another (e.g., the least touching of another's person), wilfully or in anger, whether by the party's own hand, or by some means set in motion by him.'); *Perkins v. Commonwealth,* 31 Va. App. 326, 523 S.E.2d 512, 513 (2000) ('Assault and battery is the least touching of another, willfully or in anger.') (quoting Roger D. Groot, Criminal Offenses and Defenses in Virginia 29 (4th. ed. 1998)); *Gnadt v. Commonwealth,* 27 Va. App. 148, 497 S.E.2d 887, 888 (1998) ('An assault and battery is an unlawful touching of another. It is not necessary that the touching result in injury to the person. Whether a touching is a battery depends on the intent of the actor, not on the force applied.').

*United States v. White*, 606 F.3d 144, 148-49 (4th Cir. 2010), *abrogation on other grounds recognized by United States v. Vinson*, 805 F.3d 120 (4th Cir. 2015) ("[T]he Supreme Court issued its decision in *Castleman* and held, directly contrary to our holding in *White*, that violent force was not necessary to satisfy the 'physical force' requirement of § 921(a)(33)(A)(ii)."). Thus, in Virginia's unusual framework, "[t]he crime of assault and the crime of battery are independent criminal acts, although they are linked in Code § 18.2-57." *Parish v. Commonwealth*, 693 S.E.2d 315, 329 (Va. Ct. App. 2010).

Foundationally, Virginia assault and battery (at least without a relevant aggravator) appears not to be a felony and thus cannot count under U.S.S.G. § 4B1.1(a). *See* Va. Code § 18.2-57(A) ("Any person who commits a simple assault or assault and battery is guilty of a Class

15

1 misdemeanor[.]").[18] There are felony subsections within § 18.2-57, but the United States provides no analysis on this topic and does not provide any paperwork regarding the convictions, which the PIR unhelpfully categorizes as general "Assault & Battery."[19]

Further, even if these priors were felonies, in light of *Johnson v. United States*, 130 S. Ct. 1265, 1271 (2010) ("[T]he phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." (emphasis in original)), because assault and battery "encompasses any common law battery, however slight," those offenses still would "not categorically have 'as an element the use, attempted use, or threatened use of physical [*i.e.*, violent] force against another.'" *United States v. Carthorne*, 726 F.3d 503, 513 (4th Cir. 2013); *but see United States v. Vincencio-Martinez*, 404 F. App'x 633, 637-38 (3d Cir. 2010) (unpublished) (holding: "Under the formal categorical approach, then, a conviction for 'assault and battery' under Virginia Code § 18.2-57(A) necessarily is a conviction for a [§ 16(a)] 'crime of violence'" but not grappling with *Johnson*'s definition of "physical force" as "violent force").[20]

---

[18] Rose received 12 months imprisonment for the 2002 offense, a valid punishment in Virginia for a Class 1 misdemeanor. Va. Code § 18.2-11(a) ("not more than twelve months"). He received but 10 days for the 2006 crime. Virginia courts have likewise included "the misdemeanor offense of battery" within § 18.2-57's ambit. *See, e.g.*, *Taylor v. Commonwealth*, 767 S.E.2d 721, 722-23 (Va. Ct. App. 2015).

[19] Further, PIR facts indicate that Rose battered a bar patron in 2002 and stabbed an acquaintance of his former girlfriend in 2006. *See* DE #48, at ¶¶ 46-47. These circumstances (although, again, the United States does not advocate for the convictions being felonies here) do not show or suggest that Virginia elevated Rose's assault and battery convictions to felony level per the enumerated statutory aggravators.

[20] *Vincencio-Martinez* attempted to distinguish *White*. *See* 404 F. App'x at 636 n.7. The Third Circuit criticized:

> *White* does not account for the Virginia Supreme Court's pronouncement in *Montague* that an 'assault and battery' includes an 'intent to harm.' Because 'assault and battery' requires an intent to harm, *White*'s determination that a mere 'offensive touching' is enough to commit an 'assault and battery' is not

*Third*—and this is the Government argument with traction—the United States identifies Rose's 2007 E.D. Va. convictions as proper career offender predicate offenses. *See* DE ##48, at ¶ 48; 63, at 7-8. The E.D. Va. jury, as relevant here, convicted Rose in 2008 of 4 counts of violating 18 U.S.C. § 1951 (Hobbs Act robbery), and 4 corresponding counts of violating 18 U.S.C. § 924(c). *See* DE ##77 (Verdicts) and 10 (Indictment), case no. 1:07-cr-503-LO (Counts 3, 4, 5, 6, 7, 8, 9, and 10).

Persuasive authority from around the country indicates that Hobbs Act robbery convictions properly qualify as career offender predicate offenses. For example, one district court recently explained and summarized:

> This Court will therefore join other courts in finding that Hobbs Act robbery contains as one of its elements the actual, attempted, or threatened use of physical force against the person or property of another, thereby constituting a crime of violence under § 924(c)(3)(A). *See, e.g.*, *United States v. Farmer*, 73 F.3d 836, 841–42 (8th Cir. 1996); *United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991); *United States v. Melgar-Cabrera*, No. CR 09-2962 WJ, slip op. at 13 (D.N.M. Aug. 24, 2015); *see also United States v. Morris*, 247 F.3d 1080, 1084 (10th Cir. 2001); *United States v. Welton*, 387 Fed. Appx. 189, 191 (3d Cir. 2010) (*per curiam*) (unpublished).

---

persuasive. In light of our reading of *Montague*, we decline to follow *White*'s interpretation of Virginia law.

404 F. App'x at 636 n.7 (citations removed). The Court, for its part, finds the Third Circuit's treatment unpersuasive. *White* did account for *Montague*. 606 F.3d at 148 (citing *Montague*). *White* explicitly noted the intent element. *Id. White*'s point, which *Vincencio-Martinez* missed, was that Virginia deems the necessary harm to encompass even "the slightest touching." *Id.* (citing *Lynch*, 109 S.E. at 428); *see, e.g.*, *Adams v. Commonwealth*, 534 S.E.2d 347, 350-51 (Va. Ct. App. 2000) (after stating, "One cannot be convicted of assault and battery without an intention to do bodily harm," holding that merely shining a laser in an officer's eye is sufficient to support an assault and battery conviction); *see also United States v. Doss*, 825 F. Supp. 2d 726, 729 n.3 (W.D. Va. 2011) ("The *White* decision was criticized and not followed by the Third Circuit in [*Vincencio-Martinez*], on the ground that *White* overlooked contrary Virginia case law. This was an unusual criticism, in light of the fact that *White* was authored by Circuit Judge G. Steven Agee, a former judge of the Virginia Court of Appeals and justice of the Virginia Supreme Court. While I am obligated to follow *White* regardless, I believe that Judge Agee was correct.").

*United States v. Standberry*, 139 F. Supp. 3d 734, 740 (E.D. Va. 2015).[21] Other district courts,

even more recently than *Standberry*, agree. *E.g.*, *Mobley v. United States*, Nos. 16-cv-61388-

BLOOM, 15-cr-60005-BLOOM, 2016 WL 7188296, at *4 (S.D. Fla. Dec. 12, 2016) ("As to

Hobbs Act robbery itself, persuasive authority indicates that it 'clearly qualifies as a crime of

violence under the use-of-force clause in § 924(c)(3)(A).' *In re Fleur*, 824 F.3d 1337, 1340 (11th

Cir. 2016); *see In re Rogers*, 825 F.3d 1335, 1340 (11th Cir. 2016); *see also Hill*, 832 F.3d at

144; *United States v. Collins*, 2016 WL 1639960, at *31 (N.D. Ga. Feb. 9, 2016), *report and*

*recommendation adopted*, 2016 WL 1623910 (N.D. Ga. Apr. 25, 2016) ('reference to § 1951(a)

---

[21]     "The term 'crime of violence' . . . [is] defined in various statutory provisions, including § 924(c), and in the Sentencing Guidelines, including section 4B1.2. In light of the striking similarities among those definitions, the court decisions interpreting one such definition are persuasive as to the meaning of the others." *United States v. McNeal*, 818 F.3d 141, 153 n.9 (4th Cir. 2016); *see also, e.g.*, *Moore v. United States*, Nos. 2:16-cv-598, 2:11-cr-173(2), 2016 WL 5408882, at *4 n.3 (S.D. Ohio Sept. 28, 2016) ("The definition of a crime of violence for purposes of the career offender guideline, USSG § 4B1.1(a)(3), is identical to that found in 18 U.S.C. § 924(c)(3)(A)."); *Johnson v. United States*, Nos. 4:16-CV-141-NKL, 4:07-CR-374-NKL-1, 2016 WL 3200292, at *3 (W.D. Mo. June 8, 2016) ("Section 4B1.2(a)(1) of the Sentencing Guidelines is essentially identical to § 924(c)(3)(A) at issue here."); *United States v. Howard*, 650 F. App'x 466, 468 (9th Cir. 2016) (holding: "U.S.S.G. § 4B1.2 . . . uses the nearly identical definition of 'crime of violence' as § 924(c)." and using precedent concerning one to interpret the other); *United States v. Moreno-Aguilar*, ___ F. Supp. 3d ___, No. RWT 13-cr-496, 2016 WL 4089563, at *2 (D. Md. Aug. 2, 2016) (treating the ACCA and § 924(c)(3) force clauses as "identical"); *United States v. Barnett*, 426 F. Supp. 2d 898, 907 (N.D. Iowa 2006) ("treat[ing] the definitions of 'crime of violence' under § 924(c)(3) and § 16 as identical and interchangeable").

Regarding § 16, "the definition of a 'crime of violence' under 18 U.S.C. § 16(a) is almost identical to the definition of a 'violent felony' under § 924(e)(2)(B)(i)." *United States v. Anderson*, 695 F.3d 390, 400 n.5 (6th Cir. 2012); *United States v. Williams*, 179 F. Supp. 3d 141, 146 n.5 (D. Me. 2016) (stating that § 16's crime of violence definition is "generally applicable" and is "nearly identical to the definition of 'crime of violence' in § 924(c)(3)."). "Thus, authority interpreting the former can be applied to interpret the latter." *Anderson*, 695 F.3d at 400; *see also, e.g.*, *Ortiz v. Lynch*, 796 F.3d 932, 935 (8th Cir. 2015) ("[T]he definition of 'crime of violence' in section 16 is 'virtually identical' to the definition of a 'crime of violence' in U.S. Sentencing Guidelines Manual § 4B1.2(a) and 'violent felony' in the Armed Career Criminal[] Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(i)."). The point of these many citations is the one *McNeal* succinctly makes—given the similarities, a court may generally apply authority interpreting "crime of violence" in one place to other like contexts.

The Court notes that Rose makes no argument concerning § 924(c)(3)(A)'s or § 1951's inclusion of "property." *See, e.g.*, *United States v. Hill*, 832 F.3d 135, 141 n.7 (2d Cir. 2016).

is all that is necessary to determine that the charges here do indeed satisfy § 924(c)(3)(A)'s force clause.'); *United States v. Brownlow*, 2015 WL 6452620, at *4 (N.D. Ala. Oct. 26, 2015) ('The law is firmly established that a Hobbs Act robbery is a crime of violence under § 924(c)(3)(A)' (citing out-of-circuit authority))." (citations slightly altered)); *see also Williams*, 179 F. Supp. 3d at 153; *United States v. McDaniels*, 147 F. Supp. 3d 427, 434-35 (E.D. Va. 2015) ("Hobbs Act robbery clearly qualifies as crime of violence under the Force Clause of § 924(c)(3)(A)[.]"; "Hobbs Act robbery can serve as a crime of violence pursuant to the Force Clause because it 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'"); *United States v. Pena*, 161 F. Supp. 3d 268, 284 (S.D.N.Y. 2016) (extensively analyzing § 1951 and holding: "Hobbs Act Robbery is a crime of violence within the meaning of Section 924(c)(3)(A).").

The roots of this reasoning run deep. *See, e.g.*, *Farmer*, 73 F.3d at 842 ("[Hobbs Act robbery] has as an element the use, attempted use, or threatened use of physical force against the person of another[.]"), *reaffirmed United States v. House*, 825 F.3d 381, 387 (8th Cir. 2016) ("[House] contends that Hobbs Act robbery is not a crime of violence under this statutory definition. . . . [E]ven if we analyzed the lawfulness of his sentence under § 924(c), we would be bound by *Farmer*, 73 F.3d at 842, where we concluded that Hobbs Act robbery has 'as an element the use, attempted use, or threatened use of physical force against the person of another.'"); *DiSomma*, 951 F.2d at 496 ("DiSomma's crime of conviction, conspiracy to commit robbery, is a crime of violence because one of its elements is actual or threatened use of force. 18 U.S.C. § 1951(b)(1)."); *United States v. French*, 304 F. App'x 968, 970 (3d Cir. 2008) (stating, applying only § 4B1.2(a)(1), "Hobbs Act robbery is a crime of violence"); *United States v. Mendez*, 992 F.2d 1488, 1491 (9th Cir. 1993) ("Robbery indisputably qualifies as a crime of

violence. *See* 18 U.S.C. § 1951(b)(1) (containing element of 'actual or threatened force, or violence').").

Circuits have confirmed this point even in light of recent case law. *Fleur*, 824 F.3d at 1340 ("Fleur's companion conviction for Hobbs Act robbery, which was charged in the same indictment as the § 924(c) count, clearly qualifies as a 'crime of violence' under the use-of-force clause in § 924(c)(3)(A)."); *Hill*, 832 F.3d at 144 ("Hobbs Act robbery 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'"); *Howard*, 650 F. App'x at 468 (holding that Hobbs Act robbery remains a crime of violence under the use of force clause); *United States v. Anglin*, 846 F.3d 954, 965 (7th Cir. 2017) (holding that committing Hobbs Act robbery "necessarily requires using or threatening force" and "join[ing] the unbroken consensus of other circuits" in determining that "Hobbs Act robbery is a 'crime of violence'").

In fact, the Third Circuit recently resolved the question in a situation analogous to Rose's—when the defendant was not only convicted of Hobbs Act robbery, but also "of brandishing a firearm while committing Hobbs Act robbery." *See United States v. Robinson*, 844 F.3d 137, 143-44 (3d Cir. 2016); DE #10, at Counts 3, 5, 7, and 9, case no. 1:07-cr-503-LO (charging that Rose brandished (and in some cases discharged) a firearm while robbing the establishments). *Robinson* rejected the precise arguments Rose's counsel made in the Eastern District of Virginia (including the unusual examples of throwing paint on someone's house, pouring chocolate syrup on someone's passport, or spray painting someone's car). *Compare Robinson*, 844 F.3d at 144 (rejecting the examples as "creative" but "not necessary to [the]

20

analysis"), *with* DE #134, at 14, case no. 1:07-cr-503-LO.[22] The Third Circuit thus, while acknowledging the possibility that such "far-fetched scenarios could provide a basis for conviction under 18 U.S.C. § 1951(a)," held that Hobbs Act robbery convictions, in this specific context, properly counted as crimes of violence—"the 'actual or threatened force, or violence, or fear of injury' in [Rose]'s Hobbs Act robber[ies] sprang from the barrel of a gun." *Robinson*, 844 F.3d at 144.

Rose makes utterly no argument against the weight of the case law regarding Hobbs Act robbery conviction qualification. Indeed, he makes no substantive argument at all. He, thus, has not demonstrated an entitlement to relief. The Court will follow the above case law absent persuasive litigant advocacy to the contrary.[23]

This leaves one matter, which the United States (again) failed to brief or address. Because the E.D. Va. convictions stem from one Indictment, the Court assesses whether it can properly consider the § 1951 offenses as "distinct criminal episodes" that individually qualify as career offender predicates. *See United States v. Martin*, 526 F.3d 926, 938-40 (6th Cir. 2008) (finding "immaterial the fact that two or more of the defendant's convictions stemmed from the same

---

[22] *See also, e.g., Hill*, 832 F.3d at 141 n.8 (rejecting a "fear of economic injury to an intangible asset" theory and reliance on *United States v. Iozzi*, 420 F.2d 512 (4th Cir. 1970), which Rose's counsel cites in the E.D. Va.).

[23] This is despite the possible scope argument mentioned in footnote 21 and theories that interest the Court in Rose's counsel's E.D. Va. brief. *See* DE #134, at 12-15, case no. 1:07-cr-503-LO. The District Court here has already denied Rose counsel, *see* DE #43 (Order), and Rose has not presented any such argument in this District. If Rose has arguments contrary to the above-cited case law, he must present those to the District Judge. The Court notes, for completeness, that the Sixth Circuit has squarely rejected the § 924(c)(3)(B)-related arguments Rose's E.D. Va. counsel makes. *See United States v. Taylor*, 814 F.3d 340, 375-79 (6th Cir. 2016). Ultimately, it is up to Rose, the litigant seeking relief, to present his case; he has not advanced a single substantive *Johnson*-related argument here. Although Rose is *pro se*, the Court cannot create arguments for him. *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which a plaintiff has not spelled out in his pleading." (internal quotation marks and alteration removed)). To do otherwise would "transform the district court . . . to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

indictment" and affirming ACCA applicability when, as here, the "underlying offenses occurred several days apart [and] were ultimately charged in one indictment"). "Two offenses are committed on occasions different from one another if it is possible to discern the point at which the first offense is completed and the second offense begins." *Id.* (quotation marks omitted).

The answer here, although Rose raises no issue, is clearly yes.[24] The jury found that Rose committed an over-a-month-long robbery spree in Northern Virginia, brandishing (and in some instances discharging) a firearm at each target. DE #77 (Verdicts). Rose first robbed Huntington Market in Alexandria, Virginia, on January 18, 2007. DE #10, at Count 3. He next robbed a 7-11 in Alexandria on January 31, 2007. *Id.* at Count 5. Next, Rose attempted to rob Central Market in Arlington, Virginia, on February 15, 2007. *Id.* at Count 7. Concluding his spree, Rose robbed a different 7-11 in Alexandria on February 22, 2007. *Id.* at Count 9. These crimes, which Rose committed at different locations and on different dates, were obviously "distinct criminal episodes" with discernable beginnings and endings. *See Martin*, 526 F.3d at 938-40. All four criminal episodes were separate and independent from one another. This gives Rose the necessary two (really, at the least, three[25]) career offender qualifiers without resorting to the Guidelines' residual clause.[26]

---

[24] Additionally, based on this record, the *Hill* indicia appear present in Rose's actions. *See United States v. Hill*, 440 F.3d 292, 297-98 (6th Cir. 2006). At a minimum: there was a discrete beginning and end to each offense; it would have been possible for Rose to cease and withdraw from his criminal conduct; and he committed the crimes at different business locations. Satisfaction of only one indicium is required. *United States v. Alexis*, 603 F. App'x 466, 469 (6th Cir. 2015); *United States v. Jones*, 673 F.3d 497, 503 (6th Cir. 2012).

[25] Three of the convictions qualify, even if the Court declines to count the one attempted robbery (Count 7), giving Rose the benefit of every possible doubt.

[26] In light of this determination, the Court declines to assess whether the corresponding § 924(c) convictions (Counts 4, 6, 8, and 10) themselves qualify as career offender-qualifying crimes of violence. *But see, e.g.*, *United States v. Stephens*, 237 F.3d 1031, 1034 (9th Cir. 2001) ("[T]he district court did not err in finding that Stephens's § 924(c) conviction was a 'violent felony' under the ACCA."); *Vasquez v. United States*, Nos. EP-05-CA-380-DB, EP-03-CR-1956-DB, 2008 WL 622809, at *4 (W.D. Tex. Mar. 6, 2008) ("Accordingly, existing precedent more than

Accordingly, because Judge Van Tatenhove did not employ the residual clause in assessing any of Movant's predicates (Rose had agreed that he was a career offender, *see* DE #38 (indicating no objections to the PIR, which classified him as a career offender)), and because (per the above analysis) Rose undoubtedly qualifies as a career offender under §§ 4B1.1 & 4B1.2 without application of the Guidelines' residual clause, *Johnson* provides no avenue for relief. Additionally, Rose insufficiently supported the cursory, conclusory claim, mandating dismissal. Accordingly, the claim is ill-founded, presents no real *Johnson* theory, and should be dismissed.[27] *Johnson* is inapplicable and would not modify or affect the sentencing analysis as to Rose, and other mandatory dismissal bases also exist.

Finally, and just for completeness, the Court notes that the career offender designation had no discernable impact on Rose's case. Although Judge Van Tatenhove deemed Defendant a career offender, Rose's base offense level resulted from particulars of the underlying crimes, not the career offender label. *See* DE #48 (PIR), at ¶ 39. Further, while Rose's status elevated him to a Criminal History Category VI, *see id.* at ¶ 50, the category did not change his Guideline range. Rose would have been a Category IV without the career offender enhancement, *see id.* at ¶ 49; U.S.S.G. Sentencing Table, but every Category in the Table has **life** as the range for Rose's offense level of 43. Thus, whether a I or a VI, Rose faced the same range, which the Court converted to the cumulative max of all statutory penalties, as the Guidelines require. *See* U.S.S.G. §§ 5G1.1; 5G1.2; 5G1.2, app. n. 3(B). The long and short of this paragraph is that

---

justified the Court's inclusion of Vasquez's § 924(c)(1) conviction as a predicate offense for the sentence enhancement."). Rose is a career offender without need for such analysis. This approach also avoids some possible conceptual discomfort resolving this § 2255 effort, in light of Rose's parallel attempt to vacate the E.D. Va. § 924(c) convictions by arguing, through counsel in that District, that the underlying Hobbs Act convictions are not § 924(c)-qualifying crimes of violence.

[27] Because Rose raises no true *Johnson* issue, the claim (raised 4+ years after Judgment entry) is likely time barred, *see* 28 U.S.C. § 2255(f), but, at this stage, the Court recommends dismissal of this claim only based on the deficiencies outlined above.

23

Rose, even if successful in shedding the career offender tag, would have faced an identical sentencing range before Judge Van Tatenhove. The label was, thus, immaterial to the sentence. *Cf., e.g.*, *United States v. McCarther*, 596 F.3d 438, 445 (8th Cir. 2010) (holding a possible error in Guideline calculation "immaterial due to the statutory mandatory life sentence" and therefore "moot"); *United States v. Stallings*, Nos. 12-20066-28-KHV, 16-2302-KHV, 2016 WL 4000919, at *2 n.4 (D. Kan. July 26, 2016) (rejecting a *Johnson*-based argument because, *inter alia*, Stallings's "status as a career offender . . . was immaterial [because] Defendant's adjusted offense level of 40 was higher than the offense level of 37 under the career offender guideline [and he] had a Criminal History Category VI based solely on his criminal history points"); *United States v. Ortiz*, No. 2-05-CR-44-10, 2013 WL 5942313, at *2 (E.D. Pa. Nov. 4, 2013) (finding no ineffective assistance of counsel by not challenging the career offender designation because, even if there was error, Ortiz's "life sentence was not the product of his career offender status under the Sentencing Guidelines, but was mandated by law as a result of his three prior felony drug convictions . . . making the career offender designation, and all alleged counsel error, immaterial").

### C.    *Certificate of Appealability*

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 120 S. Ct. at 1604; *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039-40 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir.

24

2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissal on procedural grounds, as to when a Certificate of Appealability should issue, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S. Ct. at 1604. Movant has not made a "substantial showing" regarding *Johnson*. The infirm claim (especially in light of Rose's lack of specific argumentation) presents no issue of reasonable debate per the applicable standards and the above analysis. Accordingly, the Court recommends that the District Court entirely deny a Certificate of Appealability regarding the *Johnson* claim.[28]

> D.    Conclusion

Accordingly, the Court **RECOMMENDS** that the District Court **DISMISS** Rose's *Johnson* claim (contained or expressed in DE ##55, 54, 51, and 44) **WITH PREJUDICE** and **DENY** a Certificate of Appealability.

## III.    CONCLUSION

Per the analyses in Parts I and II, the Court **RECOMMENDS** that the District Court **DISMISS** the time-barred non-*Johnson* claims (contained or expressed in DE ##55, 54, 51, 44,

---

[28] Rose requests an evidentiary hearing. DE #51, at 12. The Court must hold one unless "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Further, no hearing is necessary "where the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)) (internal quotation marks removed). Rose's claims do not warrant a hearing; the filings and record of the case conclusively show, for all the reasons stated above, that Rose's *Johnson* and non-*Johnson* claims fail. There are no contested factual issues that justify a hearing. The record, which needs no further development, and the law foreclose relief.

and 42) **WITH PREJUDICE**, **DISMISS** Rose's *Johnson* claim (contained or expressed in DE ##55, 54, 51, and 44) **WITH PREJUDICE**, and wholly **DENY** a Certificate of Appealability.

*    *    *    *    *

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 106 S. Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 2d day of March, 2017.

Signed By:

*Robert E. Wier*

United States Magistrate Judge